## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| KEHILYN VALERIA CAMACHO HEREDIA, | § § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL ACTION NO. 4:26-cv-1556 |
| PAMELA BONDI, *et al.*, | § § § | |
| Respondents. | § | |

### MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] is Petitioner Kehilyn Valeria Camacho Heredia's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") (ECF No. 1) as well as the Government's ("Respondents") Response to the Petition for Writ of Habeas Corpus and Motion for Summary Judgment (ECF No. 10). Petitioner then filed a Reply in Response to the Government's motion (ECF No. 11). Based on a careful review of the Petition, briefing, arguments, and relevant law, including recent binding precedent from the Fifth Circuit, the Court **RECOMMENDS** Petitioner's Petition (ECF No. 1) be **DENIED**, Respondents' Motion for Summary Judgment (ECF No. 10) be **GRANTED**, and this case be **DISMISSED WITH PREJUDICE**.

---

[1] This case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 5).

## I.    Background

According to the Petition, Petitioner is a citizen of Venezuela who entered the United States without inspection in October 2023. (ECF No. 1 at ¶ 21; ECF No. 1-3 at 5). On November 8, 2025, Petitioner was arrested for assault in Harris County, where she was apprehended and detained, but her charges were dismissed on November 14, 2025. (ECF No. 1 at ¶ 24). Petitioner was then transferred into ICE custody and has remained in immigration detention since November 25, 2025. (*Id.*). At the time of the filing of the Petition, Petitioner was in custody at the Montgomery Processing Center ("MPC") in Conroe, Texas. (*Id.* at ¶ 1). Petitioner seeks release from detention under 8 U.S.C. § 1226(a). (*See id.* at ¶¶ 67–74). Her Petition also alleges a violation of the Administrative Procedure Act ("APA") (*id.* at ¶¶ 75–86), violations of the Fifth Amendment (*id.* at ¶¶ 48–66, 87–96), a violation of the Suspension Clause (*id.* at ¶¶ 102–113), and that Respondents are equitably estopped from asserting that Petitioner is subject to mandatory detention under § 1225(b)(2)(A) (*id.* at ¶¶ 97–101).

## II.    Legal Standard

### a.  Habeas Corpus

2

A person in custody in violation of the Constitution or laws or treaties of the United States can seek relief by writ of habeas corpus.[2] *P.B. v. Bergami*, No. 3:25-cv-2978, 2025 WL 3632752, at *2 (N.D. Tex. Dec. 13, 2025) (citing 28 U.S.C. § 2241(c)(3)). "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). "The Supreme Court has interpreted § 2241 as granting district courts with jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens." *Lopez v. Ladwig*, No. 6:25-cv-1884, 2026 WL 19095, at *3 (W.D. La. Jan. 2, 2026) (citing *Rasul v. Bush*, 542 U.S. 466, 473 (2004)).

b. <u>Motion for Summary Judgment</u>

Motions for summary judgment are governed by Federal Rule of Civil Procedure ("Rule") 56. Rule 56(a) instructs the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

---

[2] In this case, no party disputes the Court's jurisdiction. Thus, as Petitioner challenges the mandatory detention scheme under 8 U.S.C. § 1225, this Court has habeas jurisdiction over his claim that he is being unlawfully detained in the United States. *Id.* (citing 8 U.S.C. § 2241(c)(3)).

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Talasek v. Nat'l Oilwell Varco, L.P.*, 16 F.4th 164, 168 (5th Cir. 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A material fact is one that "might affect the outcome of the suit under the governing law." *Bazan ex rel. v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis omitted); *see Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021). "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis omitted). The Court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

The movant is tasked with the initial burden of informing the Court of the basis for the motion and pointing to relevant excerpts in evidence that demonstrate the absence of genuine issues of material fact. *See Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 323). The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

If the movant satisfies the initial burden, it shifts to the nonmovant who must produce evidence of a genuine factual dispute; he may not merely rest on

the allegations in his pleading. *See Coastal Agric. Supply, Inc.*, 759 F.3d at 505 (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The Court should not accept "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden. *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). However, where there is evidence of a genuine factual dispute, such disputes are resolved in favor of the nonmoving party "when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017). Further, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023), *as revised* (May 19, 2023).

### III. Discussion

#### a. Mandatory Detention

Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225. (*See* ECF No. 10 at 2–3). Specifically, relying on section 1225(b)(2), Respondents argue Petitioner is "an applicant for admission" because she is an alien "present in the United States who has not been admitted," and is thus subject to mandatory detention. (*Id.* at 3 (citing 8 U.S.C.

5

§ 1225(a)(1); 8 U.S.C. § 1225(b)(2)(A))).  Petitioner's argument focuses on the fact that Respondents previously released Petitioner on an Order of Release on Own Recognizance ("OREC"), under § 1226, and therefore, she is eligible for a release on bond under that statute.  (ECF No. 11 at 2).

To be clear, the Fifth Circuit issued a recent opinion in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026). *Buenrostro-Mendez* involved petitioners who illegally entered the United States many years ago.  *Id.* at \*3 (noting that one petitioner entered the U.S. illegally in 2001 and the other entered illegally in 2009).  Similar to the instant case, the petitioners in *Buenrostro-Mendez* argued they were eligible for discretionary release on bond during removal proceedings because they did not "seek [lawful] admission" according to § 1225.  *Id.* at \*1 (citing 8 U.S.C. § 1226(a)(2)).

In its decision, the Fifth Circuit explained that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") was intended to "reduce [the] incongruity" of illegal aliens "who have entered the United States without inspection gain[ing] equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection." *Id.* at \*1 (quoting H.R. Rep. No. 104-469, pt. 1, at 225 (1996)).  For example, "[a]liens who arrived at a port of entry were subject to mandatory detention until the conclusion of the exclusion process and could not request

6

release on bond." *Id.*  However, "aliens who evaded inspection and were apprehended months or years later could seek release on bond pending deportation proceedings." *Id.*

After the passage of IIRIRA, under § 1225(a), any alien who enters the United States illegally, who has not been previously lawfully admitted, is "deemed for purposes of this chapter an applicant for admission."  8 U.S.C. § 1225(a)(1).  Under that same statute, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* § 1225(b)(2)(A).

Section 1226(a), however, provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id.* § 1226(a). The Fifth Circuit observed, "[u]nlike § 1225(b), § 1226(a)(2)(A) permits, but does not require, the Attorney General to release detained aliens on 'bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General.'" *Buenrostro-Mendez*, 2026 WL 323330, at *2 (quoting 8 U.S.C. § 1226(a)(2)(A)). As to § 1226(a), the Fifth Circuit concluded, it "undeniably does work independent from § 1225(b)(2)(A) because only § 1226(a) applies to admitted aliens who overstay their visas, become

deportable on many different grounds, or were admitted erroneously due to fraud or some other error." *Id.* at \*7.

As part of its decision, the Fifth Circuit rejected the argument that § 1225 can only apply to aliens who are actively seeking admission, as opposed to illegal aliens present in the United States who never sought lawful admission, as stretching the Supreme Court's description of the statutory scheme too far. *Id.* at \*7–8 ("In claiming that the Supreme Court's pronouncement that § 1225(b) applies to aliens who are seeking admission supports their interpretation, the petitioners inexplicably assume that the Supreme Court understood 'seeking admission' in the same way that petitioners do. It demonstrably did not.").

With the *Buenrostro-Mendez* decision in mind, the Court finds that a person who entered the United States illegally and is clearly and beyond a doubt not entitled to admission, is subject to mandatory detention under § 1225(b)(2)(A). Further, the Court finds that Petitioner is present without having been admitted and is therefore treated an as applicant for admission under 8 U.S.C. § 1225(a)(1). Finally, because an immigration officer has not determined Petitioner clearly and beyond a doubt is entitled to be admitted, the Court finds mandatory detention under 8 U.S.C. § 1225(b)(2)(A) applies. As such, the Court recommends Petitioner's petition for a writ of *habeas corpus* be denied. *See Zoila Perez Villada v. Pamela Jo Bondi, et al.*, No. 4:26-cv-1856,

2026 WL 820866, at *1 (S.D. Tex. Mar. 25, 2026) ("Petitioner's arguments regarding sections 1225 and 1226 and their implementing regulations are foreclosed by the Fifth Circuit's recent decision in *Buenrostro-Mendez . . . .*").

      b.  The APA

Petitioner alleges a claim under the APA. However, her APA claim fails because an "adequate remedy in a court" is available via habeas corpus. *See Reynaldo Muniz Mosqueda v. Todd M Lyons, et al.*, No. 4:26-cv-1841, 2026 WL 821173, at *1 (S.D. Tex. Mar. 25, 2026) (citing 5 U.S.C. § 704); *Garibay-Robledo v. Noem*, No. 1:25-cv-177, 2026 WL 81679, at *10 (N.D. Tex. Jan. 9, 2026) ("Section 704 of the APA states, in no uncertain terms, that '[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.' Because [Petitioner] requests habeas relief as the remedy for his APA claim, he unwittingly admits that there is, in fact, an adequate remedy outside of the APA."). Further, the Supreme Court recently held that "where an alien detainee's claims 'necessarily imply the invalidity of their confinement' these claims must be brought in habeas." *P. B.*, 2025 WL 3632752, at *9 (quoting *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025)). As such, the APA does not provide for judicial review of Petitioner's claim.

c. Fifth Amendment

Petitioner also alleges Fifth Amendment violations. Petitioner bases this allegation upon her immigration detention. (*See* ECF No. 1 at ¶¶ 48–66, 87–96).

The "Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Maceda Jimenez v. Thompson*, No. 4:25-cv-5026, 2025 WL 3265493, at *1 (S.D. Tex. Nov. 24, 2025) (citing *Demore v Kim*, 538 U.S. 510, 523 (2003)). With respect to substantive due process, it protects only those "fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Department of State v. Munoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). In that regard, the Supreme Court has "repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)). "Our cases 'have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Id.* (quoting *Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953)). As such, "'Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Diaz Patino v. Villegas*, No. 1:25-cv-276, 2026 WL 673166, at *5 (N.D. Tex. Mar. 9, 2026) (quoting *Matthews*

10

*v. Diaz*, 426 U.S. 67, 80 (1976)).  As for immigration detention, the Supreme Court's "longstanding view" is that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings."  *Demore*, 538 U.S. at 526.  Thus, Petitioner's substantive due process claim fails.

As for procedural due process, as an "applicant for admission," Petitioner has "only those rights regarding admission that Congress has provided by statute."  *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding her application, for the power to admit or exclude aliens is a sovereign prerogative.").  Holding otherwise would "undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter" unlawfully.  *Thuraissigiam*, 591 U.S. at 140 (quoting *Plasencia*, 459 U.S. at 32).  As Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) for the limited period of her removal proceedings, Petitioner has received the process Congress affords. *Diaz Patino*, 2026 WL 673166 at *5.  Thus, Petitioner is not entitled to a bond hearing as a matter of procedural due process.  *Id.* (explaining that, regardless of whether a Fifth Amendment challenge is based on substantive or procedural

11

due process, the government is not required to give an applicant for admission a bond hearing).

Petitioner argues that because she "was initially detained on a warrant and later released on an OREC, pursuant to § 1226, the government created a liberty interest for her, under the Fifth Amendment, to be free from mandatory detention under § 1225(b)(2)(A)." (ECF No. 11 at 6). However, the statutory framework that directs Petitioner's mandatory detention does not violate due process, let alone infringe a liberty interest, because § 1225 makes no allowances for bond considerations and presents a constitutionally permissible part of the removal process. *See Aldama Aleman v. Lyons,* No. 3:26-cv-00574, 2026 WL 906739, at \*2 (W.D. Tex. Apr. 2, 2026) ("And just as there was no due process violation when the *Demore* petitioner was detained under a mandatory detention statute during removal proceedings, so too is there no due process violation in this case when Petitioner is detained during removal proceedings under [§ 1225(b)(2)(A),] a similar mandatory detention statute."); *Rodriguez-Hidalgo v Noem*, 4:25-cv-05730 (S.D. Tex. Jan 9, 2026) (quoting *Duarte v Mayorkas*, 27 F4th 1044, 1060 n.13 (5th Cir 2022)) ("To the extent that [bond] regulations contradict the plain text of § 1225(b)(2)(A), the statute governs because "'a valid statute always prevails over a conflicting regulation.'"); *Diaz Patino*, No. 1:25-cv-276, 2026 WL 673166, at \*5 (N.D. Tex. Mar. 9, 2026) ("Here, [Petitioner] was released into the United States pending removal just a few

12

years ago. Her release was not an admission into the country, and she remains in the United States without admission. Therefore, she is entitled to nothing more than the 'limited form of process' that is offered by the respondents under their current deportation policy."). As such, the Court recommends Respondents' Motion for Summary Judgment as to Petitioner's Fifth Amendment claims be granted.

### d. Equal Protection

Petitioner also alleges that Respondents have violated the Equal Protection Clause by treating her differently from other noncitizens detained under 8 U.S.C. § 1226(a) and who may be eligible for bond. (ECF No. 1 at ¶¶ 87–96).

The Equal Protection Clause requires that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). However, "[b]eing similarly situated is key." *Hines v. Quillivan*, 982 F.3d 266, 272 (5th Cir. 2020). The Court "inquire[s] as to whether they 'are in all relevant respects alike.'" *Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021).

Here, Petitioner is not similarly situated to aliens detained under § 1226(a). As discussed above, Petitioner is an applicant for admission under § 1225(a)(1) and is subject to mandatory detention under § 1225(b)(2)(A). In contrast, § 1226(a) applies to a different category of noncitizens—generally

13

those who have been lawfully admitted but later become removable. *See Buenrostro-Mendez*, 2026 WL 323330, at \*7 ("Section 1226(a) undeniably does work independent from § 1225(b)(2)(A) because only § 1226(a) applies to admitted aliens who overstay their visas, become deportable on many different grounds, or were admitted erroneously due to fraud or some other error."). These distinct statutory classifications reflect materially different immigration statuses and grounds for removal. Because Petitioner and § 1226(a) detainees are not "in all relevant respects alike," *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992), her equal protection claim fails. Accordingly, Respondents are entitled to summary judgment on this claim.

e.   Equitable Estoppel

Petitioner further argues that Respondents should be equitably estopped from subjecting her to mandatory detention under § 1225(b)(2)(A) because she was previously released on her own recognizance under § 1226. (ECF No. 1 at ¶¶ 97–101).

As an initial matter, generally "equitable estoppel will not lie against the Government as it lies against private litigants." *Off. of Personnel Mgt. v. Richmond*, 496 U.S. 414, 419 (1990) (citation omitted). Even assuming such a claim could proceed, Petitioner has not identified any affirmative misconduct by Respondents sufficient to justify estoppel. Further, the Fifth Circuit has made clear that prior enforcement practices do not override the plain text of

14

the statute.  *See Buenrostro-Mendez*, 2026 WL 323330, at *8 ("The text says what it says, regardless of the decisions of prior Administrations.  Years of consistent practice cannot vindicate an interpretation that is inconsistent with a statute's plain text.").  Thus, the fact that Petitioner may have previously been released under § 1226 does not preclude Respondents from later applying § 1225(b)(2)(A) which now governs her detention status.  Accordingly, Petitioner's equitable estoppel claim fails.

### f.  Suspension Clause

Finally, Petitioner asserts that her detention violates the Suspension Clause.  (ECF No. 1 at ¶¶ 102–113).

The Suspension Clause protects the privilege of the writ of habeas corpus by ensuring that it is not suspended except in limited circumstances.  U.S. CONST. art. I, § 9, cl. 2.  However, it does not confer substantive rights; rather, "habeas corpus in the federal courts provides a mode for the redress of denials of due process of law."  *Fay v. Noia*, 372 U.S. 391, 402 (1963), *overruled in part on other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977), *abrogated by Coleman v. Thompson*, 501 U.S. 722 (1991); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 116–20, 140–41 (2020) (holding 8 U.S.C. § 1252(e)(2), which limited federal habeas corpus review obtainable by alien detained for expedited removal, did not violate Suspension Clause).

Here, there is no dispute that Petitioner has been able to seek habeas relief in this Court. Respondents do not challenge the Court's jurisdiction, nor do they rely on any jurisdiction-stripping provision. Accordingly, Petitioner's ability to pursue her claims demonstrates that the writ has not been suspended. Because Petitioner has had access to habeas review her Suspension Clause argument does not provide a basis for relief.

## IV.   Conclusion

Based on the foregoing, the Court **RECOMMENDS** Petitioner's Petition (ECF No. 1) be **DENIED**, Respondents' Motion for Summary Judgment (ECF No. 10) be **GRANTED**, and this case be **DISMISSED WITH PREJUDICE**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on April 20, 2026.

Richard W. Bennett
United States Magistrate Judge

16